# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY E. MYERS,<br><br>Plaintiff,<br><br>v.<br><br>FRESNO COUNTY JAIL, et al.,<br><br>Defendants. | Case No. 1:20-cv-00381-AWI-EPG<br><br>FINDINGS AND RECOMMENDATION TO DISMISS THIS ACTION FOR FAILURE TO STATE A CLAIM<br><br>THIRTY (30) DAY DEADLINE |

**I.   INTRODUCTION**

Anthony E. Myers ("Plaintiff") is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. On March 13, 2020, Plaintiff commenced this action by filing a complaint against Fresno County Jail, Fresno Police Department, Fresno Sheriff/SERT, American Ambulance, and Community Hospital (collectively "Defendants"). (ECF No. 1). On April 28, 2020, Plaintiff filed a first amended complaint ("FAC"). (ECF No. 4). In the FAC, Plaintiff alleges that his right to a speedy trial has been violated, excessive force was used in effectuating Plaintiff's arrest, and while in detention unknown technology was used to induce various bodily reactions in Plaintiff akin to assault and sexual assault.

The Court entered a screening order on August 10, 2020. (ECF No. 8). The Court found that Plaintiff failed to state any cognizable claims and gave Plaintiff thirty days from the date of service of the order to file a second amended complaint or to notify the Court that he wishes to

1  stand on the FAC, subject to the undersigned issuing findings and recommendations to the
2  assigned district judge consistent with the screening order. (ECF No. 8 at 12–14).[1]

3  On August 12, 2020, the Court received a "packet" of documents, the purpose of which
4  Plaintiff stated was to "amend and append to current filings."[2] (ECF No. 9 at 1). The Court notes
5  that although this packet was received after issuance of the August 10 screening order, it is
6  reasonable to assume that Plaintiff did not file the documents with the benefit of the legal
7  standards set forth in the screening order. The packet consists of, *inter alia*, a police event report,
8  various paperwork related to insurance claims, an automobile repair invoice, court documents
9  related to a Fresno County Superior Court case, letters written by Plaintiff to an insurance
10 company and a law firm, and copies of documents previously submitted to this Court.

11 The documents in the packet are generally not pertinent to the claims in the FAC and do
12 not alter the analysis set forth in the screening order. Accordingly, for the reasons described in
13 the screening order (ECF No. 8) and set forth below, the undersigned recommends that
14 Plaintiff's case be dismissed for failure to state a claim.

15 **II.   SCREENING REQUIREMENT**

16 The Court is required to screen complaints brought by prisoners[3] seeking relief against a
17 governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The
18 Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are
19 legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or
20 that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C.
21 § 1915A(b)(1), (2).

22 The Court may also screen a complaint brought *in forma pauperis* under 28 U.S.C.
23 § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the
24 court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is
25 ///

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.
[2] The Court notes that on the docket the packet of documents is inaccurately labeled as a second amended complaint.
[3] In the instant case, Plaintiff was detained at the Fresno County Jail at the time the complaint and the FAC were filed. Accordingly, the Court may screen the FAC pursuant to 28 U.S.C. § 1915A. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1284 (9th Cir. 2017).

1 frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks
2 monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

3      A complaint must contain "a short and plain statement of the claim showing that the
4 pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not
5 required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
6 conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell
7 Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual
8 matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 663
9 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal
10 conclusions are not. Iqbal, 556 U.S. at 678.

11      In determining whether a complaint states an actionable claim, the Court must accept the
12 allegations in the complaint as true, Hosp. Bldg. Co. v. Trs. of Rex Hospital, 425 U.S. 738, 740
13 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, Resnick v.
14 Hayes, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor, Jenkins
15 v. McKeithen, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less
16 stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342
17 (9th Cir. 2010) (holding *pro se* complaints should continue to be liberally construed after Iqbal).

18 **III.     SUMMARY OF PLAINTIFF'S COMPLAINT**

19      In the FAC, Plaintiff alleges that a SERT officer used "'pain compliance' in the form of
20 elbow strikes and head butts in addition to double tossings in a 'Rodney King styled' beatdown"
21 when arresting Plaintiff without a warrant. (ECF No. 4 at 4). Plaintiff also alleges that a non-
22 SERT officer admitted to tasing, headbutting, and elbowing as part of "pain compliance." (Id.).
23 Plaintiff appears to contend that he has not waived his right to a speedy trial.

24      The FAC further alleges that some unknown technology[4] "forced dream induced
25 ejaculations called 'Minds Eye,' simulated anal penetration, induced erections, 'so called' 'anal

---

[4] With respect to this unknown technology, Plaintiff directed the Court to take note that in 2012 the United States Department of Justice issued standards that did not include "AM/FM digital distribution of simulated body function." (ECF No. 4 at 4). Plaintiff likened the technology to "marketed simulation technology known to offer control [over] your friend" and "tech such as Backyard Brains." (Id. at 5).

dilations,' induced diarreah [*sic*], extreme cramps, disruption of breath and normal breathing, chest pains[.]" (ECF No. 4 at 4).

### IV. EVALUATION OF PLAINTIFF'S COMPLAINT

**A. Habeas Corpus or Section 1983**

The Court notes at the outset that is unclear what relief Plaintiff seeks in the instant proceeding and whether Plaintiff intends to state a habeas claim. In the FAC, Plaintiff makes references to both 42 U.S.C. § 1983 and 28 U.S.C. § 2241, the habeas corpus statute.

> Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, and a complaint under the Civil Rights Act of 1871. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action. Some cases are hybrids, with a prisoner seeking relief unavailable in habeas, notably damages, but on allegations that not only support a claim for recompense, but imply the invalidity either of an underlying conviction or of a particular ground for denying release short of serving the maximum term of confinement.

Muhammad v. Close, 540 U.S. 749, 750–51 (2004) (citations omitted).

"In cases where a prisoner's section 1983 complaint evince[s] a clear intention to state a habeas claim, [the Ninth Circuit has] said that the district court should treat the complaint as a habeas petition." Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) (citing Padilla v. Ackerman, 460 F.2d 477, 478 (9th Cir.1972); Bennett v. Allen, 396 F.2d 788, 790 (9th Cir.1968)). "When the intent to bring a habeas petition is not clear, however, the district court should not convert a defective section 1983 claim into a habeas petition." Trimble, 49 F.3d at 586. As noted above, the relief that Plaintiff seeks in the instant proceeding is unclear and Plaintiff makes references to both § 1983 and the federal habeas corpus statute. Accordingly, the Court declines to convert the FAC into a habeas petition.

The Court further notes that a jurisdictional issue may exist with claims that Plaintiff may state in a § 1983 action. In Heck v. Humphrey, 512 U.S. 477, 486–87 (1994), the United States Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. The favorable termination rule

laid out in Heck preserves the rule that claims which, if successful, would necessarily imply the invalidity of a conviction or sentence, must be brought by way of a petition for writ of habeas corpus. Muhammad, 540 U.S. at 750–751.

Here, it appears that Plaintiff may be involved in criminal proceedings related to the allegedly unlawful arrest at issue in the FAC. Plaintiff also appears to allege that his right to a speedy trial has been violated. If success on Plaintiff's claims would necessarily imply the invalidity of a conviction or sentence, then: (1) the claim must be brought by way of a petition for writ of habeas corpus; and (2) would be subject to the favorable termination rule, which requires the conviction or sentence to have been reversed, expunged, or otherwise invalidated, before Plaintiff could recover damages. Also, if a plaintiff files any "claim related to rulings that will likely be made in a pending or anticipated criminal trial[,] it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." Wallace v. Kato, 549 U.S. 384, 393–94 (2007).

**B. Section 1983**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393–94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). See also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

///

5

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676–77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation

1  of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v.
2  Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d
3  1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action
4  or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the
5  constitutional deprivations of which the complaint is made," or "conduct that showed a reckless
6  or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646
7  (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

### C. Municipal Liability

A county or other local governmental entity may be liable for a constitutional deprivation where the plaintiff can "satisfy the requirements for municipality liability established by Monell and its progeny." Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1247 (9th Cir. 2016) (citing Monell v. Dep't of Soc. Servs. Of the City of New York, 436 U.S. 658 (1978)). Under Monell, an entity defendant cannot be held liable for a constitutional violation solely because it employs a tortfeasor 436 U.S. at 691. An entity defendant can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. Id. at 694. "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (quoting Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)).

A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008). A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990). "Since Iqbal, courts have repeatedly rejected conclusory Monell allegations that lack factual content from which one could plausibly infer Monell liability." See, e.g., Rodriguez v. City of Modesto, 535 F. App'x 643, 646 (9th Cir. 2013)

1  (affirming district court's dismissal of Monell claim based only on conclusory allegations and
2  lacking factual support).

3      "Private actors have been found to act under color of state law where they contract with
4  the state to provide a service that the state bears 'an affirmative obligation to provide.'" Cox v.
5  California Forensic Med. Grp., 2015 WL 237905, at *2 (N.D. Cal., Jan. 14, 2015) (quoting West
6  v. Atkins, 487 U.S. 42, 55–56 (1988) (finding private doctor acted under color of state law in
7  providing medical care to inmates under a contract with prison because Eighth Amendment
8  requires prison to provide such care to inmates)). Additionally, Monell liability extends to § 1983
9  suits against private entities that are acting under color of state law. Tsao v. Desert Palace, Inc.,
10  698 F.3d 1128, 1139 (9th Cir. 2012).

11      **D.  Use of Excessive Force During Arrest**

12      A § 1983 claim for excessive use of force during an arrest is analyzed under the Fourth
13  Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 395–99
14  (1989). "The question is whether the officers' actions are objectively reasonable in light of the
15  facts and circumstances confronting them, without regard to their underlying intent or
16  motivation." Byrd v. Phoenix Police Dep't, 885 F.3d 639, 642 (9th Cir. 2018) (quoting Graham,
17  490 U.S. at 397). To determine whether the force used is "objectively reasonable," the Court
18  balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests
19  against the countervailing governmental interests at stake." Graham, 490 U.S. at 397. "The
20  essence of the Graham objective reasonableness analysis is that the force which was applied
21  must be balanced against the *need* for that force: it is the need for force which is at the heart of
22  the Graham factors." Headwaters Forest Def. v. Cty. of Humboldt, 276 F.3d 1125, 1130 (9th Cir.
23  2002), as amended (Jan. 30, 2002) (quoting Liston v. County of Riverside, 120 F.3d 965, 976
24  (9th Cir. 1997) (internal quotation marks and brackets omitted).

25      A court must "first assess the quantum of force used to arrest the plaintiff by considering
26  the type and amount of force inflicted." Drummond v. City of Anaheim, 343 F.3d 1052, 1056
27  (9th Cir. 2003) (internal quotation marks and brackets omitted). Second, a court balances the
28  government's countervailing interests. This involves considering "the severity of the crime at

issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Using these factors, a court must determine "whether the force employed was greater than is reasonable under the circumstances." Drummond, 343 F.3d at 1058.

The FAC alleges that a SERT officer used "'pain compliance' in the form of elbow strikes and head butts in addition to double tossings in a 'Rodney King styled' beatdown" when arresting Plaintiff without a warrant. (ECF No. 4 at 4). Plaintiff also alleges that a non-SERT officer admitted to tasing, headbutting, and elbowing as part of "pain compliance." (Id.).

Plaintiff appears to bring a claim against the Fresno Police Department and the Fresno County Sheriff's Office for use of excessive force during Plaintiff's arrest. No individuals are named as defendants. While Plaintiff's allegations appear sufficiently specific to show that force was used and could have been excessive, see Byrd, 885 F.3d at 642–43 (finding plaintiff stated claim for excessive force by alleging defendant police officers "beat the crap out of" plaintiff), there are no specific allegations suggesting that excessive force was used pursuant to an official municipal policy. Accordingly, Plaintiff has failed to state a claim against any entity defendants.

**E.  Speedy Trial**

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. A speedy trial is a fundamental right guaranteed by the Sixth Amendment and imposed upon the states by the Due Process Clause of the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 223 (1967). The Court must balance four factors in determining whether there has been a violation of the right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) whether the defendant suffered prejudice as a result of the delay. Dogget v. United States, 505 U.S. 647, 651 (1992) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). No one factor is necessary or sufficient and there is no affirmative demonstration of prejudice necessary to prove a violation of the right to a speedy trial; instead, the four related factors "must be considered together with such other circumstances as may be relevant." Moore v. Arizona, 414 U.S. 25, 26 (1973) (per curiam) (citation omitted).

1    The FAC does not contain sufficient facts to state that a speedy trial violation has

2 occurred. The FAC has no factual allegations regarding the length and reasons for delay, whether

3 Plaintiff asserted his right to a speedy trial, and the resulting prejudice.[5]

### F. Use of Technology to Induce Physical Reactions

> "The status of the detainees determines the appropriate standard for evaluating conditions of confinement." *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987). "Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 537 n.16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
>
> "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004) (citing *Bell*, 441 U.S. at 538, 99 S.Ct. 1861). "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Id.* at 1030 (citation omitted). Once harm is established, the court considers "whether this harm is imposed 'for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.' " *Id.* (quoting *Bell*, 441 U.S. at 538, 99 S.Ct. 1861).

Vazquez v. Cty. of Kern, 949 F.3d 1153, 1163 (9th Cir. 2020).

> "Most cases that involve unwanted sexual contact or harassment by public officials have been analyzed under the substantive due process right to be free from violations of bodily integrity under the Fourteenth Amendment." *Fontana v. Haskin*, 262 F.3d 871, 881–82 n.6 . (9th Cir. 2001). "Under the Fourteenth Amendment's substantive due process prong, we use the 'shocks the conscience' test." *Id.* at 882 n.7 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). "The threshold question is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *Sacramento*, 523 U.S. at 848 n. 8, 118 S.Ct. 1708).

Vazquez, 949 F.3d at 1162 (footnote omitted).

///

---

[5] As set forth in section IV(A), *supra*, a jurisdictional issue may exist with any speedy trial claim that Plaintiff may state. See Heck, 512 U.S. 477; Muhammad, 540 U.S. 749. Further, it is unclear whether monetary damages pursuant to 42 U.S.C. § 1983 are an available remedy for a violation of the right to a speedy trial. See Betterman v. Montana, 136 S. Ct. 1609, 1615 (2016) ("The sole remedy for a violation of the speedy trial right [is] dismissal of the charges[.]" (citing Strunk v. United States, 412 U.S. 434, 440 (1973); Barker v. Wingo, 407 U.S. 514, 522 (1972))).

Here, the allegations of the FAC underlying Plaintiff's claims regarding his detention are factually frivolous. "[A] court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" Denton v. Hernandez, 504 U.S. 25, 32–33 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327, 325, 328 (1989)). "As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton, 504 U.S. at 33. The facts alleged by Plaintiff—that some unknown technology (similar to marketed simulation technology known to offer control over friends) was used to induce various bodily reactions (ejaculation, erection, anal dilations, diarrhea, extreme cramps, disruption of breath, chest pains) in Plaintiff—are patently incredible.

## V. CONCLUSION AND RECOMMENDATION

The Court has screened the FAC and finds that it fails to state any cognizable claims. It is unclear what relief Plaintiff seeks in the instant proceeding and whether Plaintiff intends to state a habeas claim. Additionally, any § 1983 claims may be barred by Heck v. Humphrey, 512 U.S. 477 (1994).

The Court previously explained to Plaintiff the deficiencies in the FAC, provided Plaintiff with relevant legal standards, and provided Plaintiff an opportunity to amend his complaint. Although Plaintiff filed a packet of documents to "amend and append to current filings," the documents are not particularly pertinent to the claims set forth in the FAC. Furthermore, Plaintiff elected not to file a second amended complaint with the benefit of the information provided by the Court in the previous screening order. Therefore, the undersigned finds that further leave to amend would be futile.

Based on the foregoing, the undersigned HEREBY RECOMMENDS that this action be dismissed for failure to state a claim.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within

**THIRTY (30) days** after service of the Findings and Recommendation, Plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 29, 2020**         /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE